```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
 2                      CHARLESTON DIVISION

 3    DANNY C. SHACK, JR., as Parent     :
      and Guardian Ad Litem for          :
 4    J. SHACK, minor                    :
                                         :
 5              vs.                      :
                                         :
 6    COOPER TIRE & RUBBER COMPANY       :    2:16 CV 3711

 7    TAMARA L. MOORE                    :
                                         :
 8              vs.                      :
                                         :
 9    COOPER TIRE & RUBBER COMPANY       :    2:16 CV 3716

10

11        Motion Hearing in the above matters held Wednesday,

12    May 30th, 2018, commencing at 10:05 a.m., before the

13    Hon. David C. Norton, in Courtroom III, United States

14    Courthouse, 83 Meeting St., Charleston, South Carolina,

15    29401.

16    APPEARANCES:

17              RONNIE L. CROSBY, ESQ., P.O. Box 457, Hampton,
                SC, appeared for plaintiffs.
18
                LAURA W. JORDAN, ESQ., P.O. Box 7368, Columbia,
19              SC, appeared for defendant.

20              REED T. WARBURTON, ESQ., 1819 Fifth Ave. North,
                Birmingham, AL, appeared for defendant.
21

22

23              REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
                          P.O. Box 835
24                      Charleston, SC  29402
                          843-579-2600
25
```

1          THE COURT:  Okay.  I'm ready when y'all are.

2          MR. WARBURTON:  Good morning, Your Honor, may it

3    please the Court, Tom Warburton here for Cooper tire.  This is

4    two cases consolidated for discovery before Your Honor.  All

5    plaintiffs are represented by Mr. Crosby.  Ms. Jordan and I

6    represent Cooper Tire.  We have two motions pending before you

7    noticed for hearing this morning, the first being Cooper

8    Tire's and the second the plaintiffs'.

9          Some discussion of the facts of the case and procedural

10    history is necessary to resolution of these matters.  Shall I

11    just say, if I get too granular, I'll count on the Court to

12    tell me to quit, okay?

13          These are two product liability cases arising from an

14    August 2013 accident.  The plaintiffs' family, in fact, 11

15    related passengers were traveling in a Ford Econoline van

16    equipped to carry seven folks.  The van was rented from a

17    Virginia company called Virginia Auto Rental out of Virginia

18    Beach, Virginia.

19          And they all were involved in the accident on the highway.

20    The plaintiffs in these cases allege that the accident was

21    caused by a tire manufactured by my client, Cooper Tire, in

22    2008.

23          Discovery has yielded that that tire, along with the other

24    tire that was on the rear axle of the van on the accident day

25    were purchased, used, meaning they had been on a predecessor

1    vehicle, and driven for some unknown amount of time/distance,

2    and then taken off and then resold to Virginia Auto Rental.

3        In fact, what we call the companion rear tire, which would

4    be on the other side of the rear axle, failed tread and tire

5    belt separation 15 minutes before the accident.

6        Ms. Shack, who was driving, pulled over without incident

7    on that tire, but then 15 minutes later, the tire that the

8    plaintiffs allege is defectively designed and manufactured in

9    these cases, also failed.  The trooper that responded has

10   testified that the crash was not caused by the tire but was

11   caused by driver error.

12       These were originally -- the plaintiffs originally brought

13   suit in Virginia against Virginia Auto Rental.  They sued both

14   that company and the driver, Jacqueline Shack, their relative,

15   for negligence arising out of the accident, both in the

16   driving and in the maintenance and rental of the van.

17       They settled those negligence claims.  They then brought

18   claims in South Carolina in Dorchester County, six original

19   actions.  Cooper Tire brought those cases by removal to this

20   Court in November of 2016.

21       The parties immediately agreed to consolidate all such

22   cases for discovery.  The Court entered its standard

23   conference and scheduling order.  There were two amendments to

24   that, that are not material here.  Those took place in 2017,

25   in February and in May.

1    In mid 2017, the parties, by stipulation, by agreement,

2    agreed to voluntarily dismiss all but two of the cases, those

3    now pending before this Court.

4    Postdismissal, the parties agreed and requested by joint

5    request, an amended scheduling order.  That's ECF No. 21.

6    That is the one that is now material and now active pending

7    plaintiffs' motion on it.  It was entered as ECF No. 22.  And

8    I'm citing to what we have been designating the lead case, the

9    Shack action, Your Honor.  That scheduling order set

10   deadlines, those of which are material here, for February.

11   The deadline for plaintiffs to identify proposed expert

12   witnesses, March; the deadline for fact discovery to conclude

13   in April, all in '18, the deadline for Cooper Tire to identify

14   its experts.

15   Prior to the close of fact discovery, Cooper Tire noticed

16   and took 14 fact witness depositions in four states.

17   Plaintiffs did not notice or take any depositions.  The

18   parties exchanged written discovery, primarily taking place in

19   2017.  And in connection with that, the topic of a protective

20   order to govern Cooper Tire's trade secret documents, the

21   confidential documents describing and depicting its

22   manufacturing and design processes specifications, et cetera,

23   was raised.  Cooper Tire raised that in responding timely to

24   plaintiffs' request for production and interrogatories.  The

25   plaintiff ultimately responded that it was unwilling to agree

1    to a form of protective order that Cooper Tire had proposed,

2    and Mr. Crosby on behalf of various plaintiffs had accepted

3    myriad times, both before this Court as well as before the

4    State Courts in South Carolina.  And it is the form protective

5    order that Cooper Tire proposes, and something on the order of

6    90 percent of the time is agreeable.  When not agreeable, it

7    results in motions such as the one that Cooper Tire has filed

8    to you, Judge, which is a request that the Court enter its

9    standard protective order to govern the trade secret materials

10   that it will produce in this case.

11        Cooper Tire's protective order, as I mentioned, has been

12   agreed to over the years many many times by Mr. Crosby.  It

13   has been analyzed and adjudged to be appropriate for a

14   products case like this previously by this Court on more than

15   one occasion, both by agreement, and, when disputed, the South

16   Carolina State Courts have also determined this protective

17   order to be appropriate, and it's been determined to be

18   appropriate across the country.

19        It is the form of protective order, when it comes to the

20   two core provisions that we disagree about, as I understand it

21   from the briefing, with plaintiffs, it is the form of

22   protective order on those two provisions mandated by the South

23   Carolina Trade Secret Act.

24        Plaintiffs agree that Cooper Tire's trade secret

25   information is due protection.  Cooper Tire, because this is

1    such a critical question, not only accepts that agreement, but

2    has provided all the evidence of record, unrebutted,

3    undisputed, establishing trade secret status for its

4    materials.  And that would be the trade secret status pursuant

5    to South Carolina Statute 39-8-20(5), which defines a trade

6    secret.  And for purposes of protection of my client, I will

7    simply recite that that statute identifies information,

8    including a number of enumerated categories that derives

9    independent economic value to Cooper Tire from not generally

10    being known to the public and not ascertainable by proper

11    means by the public, and is the subject of efforts that are

12    reasonable under the circumstances to maintain a secrecy.

13        We have established that by ECF No. 25-6, an affidavit.

14    It is not rebutted, it is not questioned in this case.  And,

15    therefore, under the case law and under statutory law in this

16    state, Cooper Tire is due to have its information protected.

17        The governing law is found not only in the South Carolina

18    Trade Secret Act, which says that any confidential

19    information, quote, "must be governed by an appropriate

20    written protective order of the Court."  But it says, further,

21    such information, quote, "may only be disclosed to persons

22    identified in the written protective order of the Court and

23    may be used or disclosed only in the action in which it is

24    protected.  In the action in which it is produced.  Litigation

25    sharing orders pertaining to trade secret information must not

1    be entered by the Court."

2                THE COURT:  That's a state statute, so that really

3    doesn't govern Federal Court, right?

4                MR. WARBURTON:  Well, I will take issue with that.

5                THE COURT:  In the State Court action they're

6    governed by the -- we're under the Federal Rules of Civil

7    Procedure and we do federal discovery a little differently.

8                MR. WARBURTON:  Yes, sir.  However, of note very

9    recently, last week, the Fourth Circuit determined the

10   Hartsock, H-A-R-T-S-O-C-K, versus Goodyear case, in which this

11   question was presented.  And the Fourth Circuit certified the

12   question over to the South Carolina Supreme Court.  South

13   Carolina Supreme Court pronounced that there is indeed a trade

14   secret privilege, which is a qualified privilege.

15               THE COURT:  Qualified privilege, right.

16               MR. WARBURTON:  Yes, sir.  And then the Fourth

17   Circuit reversed and remanded the decision of the District

18   Court, consistent with that opinion.  So there is indeed

19   application in play of the State Court privileges and Trade

20   Secret Act.

21               THE COURT:  The issue in that case was did the

22   privilege exist and was it either qualified or absolute.

23   Didn't have anything to do with the part of the statute that

24   says it can not be shared.  Is that correct?

25               MR. WARBURTON:  True.  That specific provision.

1          THE COURT:  What we're here for is do you want

2    Mr. Crosby to keep it and share it, or just keep it -- or you

3    don't want him to keep it or share it.  He wants to keep it

4    and share it.  And so isn't that what we're here for?

5          MR. WARBURTON:  It is.

6          THE COURT:  Okay.

7          MR. WARBURTON:  To get to the core, no question.

8          THE COURT:  And he doesn't contest that these are

9    trade secrets either.

10          MR. WARBURTON:  He does not.  And that is consistent.

11    Although --

12          THE COURT:  Maybe not all of them, but most of them.

13          MR. WARBURTON:  Although unwilling to agree to the

14    form of protective order here, Your Honor, and specifically

15    the two items that you've mentioned, Mr. Crosby and

16    plaintiffs' counsel have not contested the trade secret status

17    of the information to be produced.

18          THE COURT:  At least they don't contest what you

19    think you have as trade secrets, and after they take a look at

20    them, they may or may not be trade secrets.  I guess he has a

21    right to contest whether what you're saying is a trade secret

22    or not.

23          MR. WARBURTON:  Under any protective order this Court

24    would enter, Your Honor, whether it be that preferred by

25    Cooper Tire, that preferred by plaintiffs or something

1  otherwise, I don't think there's any dispute that the routine

2  is as you've stated, which is Cooper Tire designates materials

3  upon production to be confidential under the protective order,

4  and then there is a provision within the protective order that

5  allows challenges, if felt necessary by plaintiffs.

6      Cooper Tire's protective order, when it comes to the two

7  core questions you've raised, Your Honor, the two points of

8  disagreement between these parties, is in line with this

9  District's form protective order.

10     First, dissemination, as you mentioned, the Court's form

11  confidentiality order explicitly prohibits distribution of the

12  confidential materials outside of the case.  Cooper Tire's

13  protective -- proposed protective order, which, for your

14  reference is document 25-2 at paragraph seven, includes the

15  same or similar provisions.

16     And then on the second point, which is -- I suppose could

17  be called retention by counsel -- the Court's form protective

18  order at paragraph 10(b) requires return.  Cooper Tire's

19  proposed protective order is consistent at paragraph 15.

20     Plaintiffs' counsel is basically seeking completely

21  unrestrained discretion to send Cooper Tire's undisputed trade

22  secrets to any other lawyer.

23         THE COURT:  Well, that's part of it, but there --

24  actually he wants to keep it for his own cases, and not have

25  to reinvent the wheel for every one of Mr. Crosby's cases.  He

1  wants to have the ability to give to other plaintiffs' lawyers

2  who have Cooper Tire cases, and wants to give it to NHTSA in

3  certain situations.

4         MR. WARBURTON:  You're right.  By way of summary, he

5  wants the discretion to send it to others, he wants to be able

6  to keep it himself.  And those --

7         THE COURT:  And use it in his other Cooper Tire

8  cases.

9         MR. WARBURTON:  Keep it in his law firm for use

10  elsewhere, as he says, in other Cooper Tire cases.  And that

11  would be in the nature of completely discretionary to him,

12  unfettered, even after this case potentially is long gone,

13  resolved either by way of settlement or trial.  He proposed

14  that at his law firm for, I suppose his convenience sake, to

15  retain the property, the undisputed trade secrets of Cooper

16  Tire.

17      As you have mentioned, the Trade Secret Act is a State

18  Court -- is a state statute and was not tested in Hartsock,

19  but it is specific and it is, we would urge the Court, worth a

20  read in deference that because it says that dissemination and

21  retention of the type proposed by plaintiffs' counsel in a

22  protective order, quote, "must not be entered."

23      Cooper Tire's protective order, to cut to the chase of

24  sort of the convenience argument, and I believe with respect

25  to plaintiffs' arguments that they have submitted in their

1    briefing, it proves them hollow.  Because over the past 15

2    years, approximately, counsel for plaintiffs, Mr. Crosby, in

3    cases with myself and others against Cooper Tire, has

4    repeatedly agreed to the entry of this protective order in

5    both Federal and State Courts.  And each of these cases

6    proceeded without any protective order-related dispute or

7    difficulty, to include the matters of professional

8    responsibility that Mr. Crosby raises, to include any other

9    convenience-based arguments.  These cases proceeded to

10   conclusion without a peep of a problem relating to the

11   protective order.

12        This Court has resolved, by way of my research, in a

13   Cooper Tire case, this issue once before, that is, in the

14   cases that were -- more than one case -- but the lead case was

15   Vera, V-E-R-A, and that was a 2014 case cited in our briefing

16   as a protective order litigated between Mr. Crosby, his firm

17   and plaintiffs on the one hand, and Cooper Tire on the other.

18   And as to the two provisions disputed before this Court,

19   dissemination and retention, the Court concluded that

20   plaintiffs' arguments in favor of dissemination and retention

21   were not well taken, and entered the provisions requested by

22   Cooper Tire.

23        THE COURT:  You mean it was litigated, or just agreed

24   that they just have the regular confidentiality.  I don't

25   remember ever having litigated this before.

1          MR. WARBURTON:  Litigated, Your Honor.  Motion to

2     enter opposed, argued, as I understand it, that -- I believe

3     that was argued by telephonic hearing and determined.  And if

4     Your Honor please, that case number is 3:14 CV 00123.

5          Plaintiffs' requested order is legally unsupported.  They

6     present a mish mash of arguments, some of which I've

7     discussed, and some of which I'll discuss now.  They provide

8     no evidence, they provide no cite, no reference, no quote to

9     South Carolina law of any kind, to Fourth Circuit law or

10    District of South Carolina law at any time.  There is no

11    explanation for the change in plaintiffs' counsel's past

12    agreement that the law requires entry of Cooper Tire's

13    protective order.

14         Why is plaintiffs' counsel opposing Cooper Tire's motion

15    in this case?  It seems to be a desire to serve the interests

16    of plaintiffs' counsel and his law firm in sort of case

17    coordination and development.  And it does not serve -- I

18    think it's an important thing to note that plaintiff counsel's

19    protective order does not in any way serve plaintiffs.  This

20    is a case between two -- between parties, Cooper Tire on the

21    one hand, Ms. Moore and young minor Shack on the other hand.

22    And if plaintiffs' protective order were to be entered, it

23    would make plaintiffs' case against Cooper Tire no different.

24    This is a form of protective order requested by plaintiffs'

25    counsel to serve the interests of plaintiff counsel alone.

1    And as we have stated in our briefing, the Court is not

2    required to blind itself to the purposes for which a party

3    seeks information.

4    Further, to involve this Court, both during the pendency

5    of these cases and potentially after, in a supervision or a

6    source point, and thereby a forced supervision of Cooper

7    Tire's trade secret documents after this case is over, for an

8    unknown duration, goes too far.

9    As I've said, discovery is between parties.  A case or

10    controversy is required.  This Court is required to apply the

11    governing law to the facts of the case for this case, not for

12    whatever cases Mr. Crosby, or then another link in the chain,

13    another person after that seeks to export these documents.

14    The law is clear.  We believe that the law mandates entry of

15    the protective order that Cooper Tire has proposed, and

16    nothing in any law or rule, federal or otherwise that this

17    Court is bound to apply, speaks to other cases or counsel

18    keeping documents for convenience.  It will only make both

19    administrative and substantive trouble during this case and

20    after the case is closed.

21    In the end, plaintiffs' counsel give no compelling reason

22    to depart from the central common sense restrictions that are

23    found both in the Court's form confidentiality order, the

24    protective order to which Cooper Tire and plaintiffs' counsel

25    have agreed repeatedly, and the Vera protective order which

1    this Court determined, on dispute, was appropriate.

2        Unless the Court has further questions pointed to any

3    specific argument, I will thank you for your time, Your Honor.

4            THE COURT:  Thank you.

5        Yes, sir, Mr. Crosby.

6            MR. CROSBY:  Thank you, Your Honor, please the Court.

7        As an initial matter, the Vera court, the order that was

8    entered there was by consent.  We had some conferences with

9    Judge Currie's clerk; Judge Currie did not rule on that.  The

10   nonsharing and return of documents was something that I

11   ultimately agreed to.  There was other provisions that Cooper

12   Tire was seeking to enforce, such as I could not even -- they

13   didn't want me to even load documents on my law firm's server.

14   And so we had issues, but that was never litigated.

15           THE COURT:  That wasn't my case, that was Judge

16   Currie's case?

17           MR. CROSBY:  It was Judge Currie.

18           THE COURT:  Oh, good.  I thought I'd forgotten it.

19           MR. CROSBY:  As well as in the Lee case with Judge

20   Gergel, that was by consent.  This issue has not been

21   litigated in this court.  And I think Mr. Warburton was simply

22   mistaken as opposed to intending to misrepresent that to the

23   Court.

24           THE COURT:  I'm sure.

25           MR. CROSBY:  At the outset, the Trade Secrets Act has

1    little or nothing to do with this.  I would posit to the Court

2    that this entire argument relying on the Trade Secrets Act has

3    nothing to do here.  These documents will not rise to the

4    level of trade secrets.

5        We asked for two categories of documents that could rise

6    to the level of trade secrets.  That would be the compound

7    formula for the tire and the halobutyl content for the inner

8    liner.  Cooper Tire has put a huge objection to that, citing

9    the Laffitte versus Bridgestone case, which is a case that I

10   was involved in that the South Carolina Supreme Court dealt

11   with that specific issue of trade secrets, as did the Hartsock

12   case.  That was what was at issue there, was a compound form

13   that Judge Duffy had ordered Goodyear to turn over.

14       While I don't have these documents, I've seen many of

15   them.  Cooper Tire has refused to produce anything that they

16   really consider a trade secret.  So I just want to clear that.

17   That is not what we're talking about.  We're talking about

18   ordinary confidential documents that I agree should be subject

19   to a protective order, but -- And just to jump to the real

20   reason here, it's not in the interests of plaintiffs' counsel.

21   While almost every major corporation that I have litigation

22   pending, General Motors, Ford, Bridgestone, Michelin, you

23   know, just name them, and the companies have a similar type of

24   protective order that we have here, where if there is -- that

25   we're advocating for -- if there is something that a trade

1    secret shown, that that could never be shared, it would always

2    be returned.  But these confidential records, I was trying to

3    think last night how many I probably had, and this is

4    literally, you know, millions of manufactured documents that

5    I've retained over the years with no problem.

6         And what it does, in this repeat litigation where we're

7    asking for the same documents over and over, it stops from

8    having to come here.  We had to file motions to compel in the

9    Lee case.  I recently filed one this the Anderson case, likely

10   in the Senseney case that's pending up in Florence County,

11   we'll probably end up with that.  And what it does is gets rid

12   of that necessity to continually have discovery practice where

13   we're having to come back and ask for the same documents over

14   and over and this fight over and over.  And it takes up the

15   Court time.  And very well it -- this is the perfect type of

16   case for an order that has a nonreturn of documents, and

17   sharing provisions with other cases.  Because we're asking for

18   basically the exact same documents in each one of these cases.

19   And we're having to put time and effort, sometimes in -- for

20   example, just recently in the Anderson case, all the -- I

21   think the case was filed two years, and probably three years

22   into the case before I actually got documents, the same

23   documents that were at issue in a case with Judge Harwell that

24   were produced up in a case called Stotler, and cases I've

25   cited in our memorandum.  It just isn't as easy as they make

1    it out to be.  We file a case, although they know I know what

2    the documents are, we're talking about by and large a lot of

3    documents, as I pointed out in our memorandum, that were first

4    produced pursuant to an order of Judge Perry Buckner, a

5    Circuit Court Judge, back in the early 2000s.  I mean, some of

6    these documents that are just -- that's how old they are, but

7    they're still relevant to the tire at issue in this litigation

8    and other litigation.

9        And I say this as just totally something that's within the

10   Court's discretion.  If the Court does not find our arguments

11   compelling on the nonreturn and sharing -- and on the sharing

12   side, the order that we proposed had a notice provision

13   whereby Cooper Tire would receive notice, and they could

14   certainly object if they did not want -- did not think those

15   documents appropriately shared with other counsel with Cooper

16   Tire cases.

17       But if there is a situation where this Court is going to

18   approve of a sharing provision and a nonreturn of documents so

19   they can be used in other cases, this is the case for that.

20   Because there's currently other cases pending in South

21   Carolina where these same documents have been requested, and

22   you can see from the history there, this has been going on for

23   15 years, and here we're still arguing about these.

24       And the reason I changed my position is because I simply

25   become fatigued.

1          THE COURT:  Had all the fun you can take?

2          MR. CROSBY:  I've had all the fun I can take.  It's

3    not as easy as they make it seem.  It really does add to the

4    cost.  And where it benefits -- it may not be the direct

5    benefit here to Miss Shack and Miss Moore, but in other cases

6    it certainly will benefit both the plaintiffs and the courts

7    by not having to deal with these issues.

8          And there's certainly no indication that I would ever do

9    anything to disclose to some outside entity or improperly

10   handle these documents because, I mean, I filed an affidavit

11   in that Vera case with Judge Currie on that very issue,

12   because they were challenging the security of -- and I think

13   that may have been decided, but I think it was more through

14   Judge Currie does a lot of things through her law clerk with

15   conferences, where she pretty much telegraphs what she's going

16   to do.

17         But I don't really have anything else to add to that, Your

18   Honor.  Certainly, you know, it's within your discretion.  And

19   if the Court denies our request for these provisions which

20   basically modify the standard form order that District Court

21   here in South Carolina has used, I would ask the Court to

22   enter the standard order, not Cooper Tire's.  Because notably,

23   Cooper Tire's order does not contain what South Carolina has

24   long required, is that an attorney of record sign off saying

25   that these documents are indeed confidential.  Because I know

1    for certain that many of the documents that we're talking

2    about have been entered in litigation in other cases, and

3    would have likely lost their -- any confidential status, once

4    they were put in the litigation.

5        So at a minimum, if the Court denies our request to amend

6    the District Court scheduling order -- I mean protective

7    order -- I would ask that you enter -- that the Court enter

8    our standard order, at a minimum.

9        Unless you have any other questions.

10           THE COURT:  That's fine.

11           MR. WARBURTON:  Very briefly, Your Honor?

12           THE COURT:  Sure.

13           MR. WARBURTON:  Number one, I hope it is obvious to

14   the Court that while there is a disagreement regarding the

15   pending motions, Mr. Crosby and I get along.  And he is

16   correct that I in no way intended to give you wrong

17   information regarding the Vera case.  That is indeed the

18   product of the conversations with Judge Currie's law clerk in

19   which a description of the Court's intended rulings was given,

20   as well as a follow on telephone conference with Judge Currie

21   in which she told the parties what she was willing to do.  And

22   that was my description of those oral pronouncements, both

23   from the Court and its staff.

24           THE COURT:  That's fine, no problem.  I'm just glad I

25   didn't forget it.

1          MR. WARBURTON:  Second, so that it is ultra clear and

2     there aren't any mistaken understandings, I have the Fourth

3     Circuit's Hartsock opinion, which it issued May 24, 2018 in

4     the case numbered 16-1172.  And they say specifically, they

5     being the Fourth Circuit, specifically says that the question

6     before them which they referred to the South Carolina Supreme

7     Court, was whether South Carolina underlying statutory law

8     applied is applicable in the federal proceeding in the

9     District of South Carolina, as to this disputed trade secrets

10     in that case.

11          And the Fourth Circuit explained that an affirmative

12     answer to that question, quote unquote, would say yes.  And,

13     therefore, the South Carolina Trade Secret Act does apply to

14     the dispute before this Court on the protective order.  It is

15     not the provision of the Trade Secret Act debated or disputed

16     in the Hartsock opinion.  But it is indeed an affirmative

17     answer out of the Supreme Court of South Carolina, followed

18     and now enforced -- or applied by reversal, vacating the

19     decision of the District of South Carolina and remand last

20     week on the 24th.

21          Finally, I think Mr. Crosby is mistaken when he represents

22     to the Court that there is some dispute or there is some

23     question regarding the documents' trade secret and

24     confidential status.  And what he said was, the way I heard

25     it, that I or counsel for Cooper Tire somehow, quote, know

1    that the documents have been -- have lost their trade secret

2    status by virtue of introduction into evidence.

3         And that is precisely the argument against which we move

4    for protective order in this case.  Because if the protective

5    order is entered, it is in the preservation of that

6    confidential status, it is in the preservation of that trade

7    secret status, and it will work ultimately the way it worked

8    in the Toe versus Cooper Tire case, which plaintiffs have

9    attempted to apply for this point.  They say in their brief

10   these documents were entered into evidence in Toe, in Iowa,

11   and so, therefore, they can not be trade secrets.  Well, that

12   is exactly the opposite of what the Court presiding over the

13   Toe matter concluded.  The Court in Toe held specifically that

14   the documents retained their trade secret protections through

15   and after trial, because, quote, "they are research and

16   manufacturing documents created by Cooper Tire in the

17   manufacturing process which Cooper Tire spent money to create

18   and to protect from public dissemination and which could

19   provide an advantage to one of Cooper Tire's competitors if

20   they came into their possession," close quote.

21        It is undisputed, there is no evidence to the contrary, no

22   matter how many small digs and arguments occur in this case,

23   that the documents at issue are trade secrets.  We have

24   established that by affidavit by competent evidence before the

25   Court, which is unimpeached and unrebutted.  And when they

1    are -- when they are proven to be trade secrets, as we have

2    done, the Court is bound by governing law, both federal and

3    state, to enter a protective order on these two specific

4    debated points, restricting the documents to this case, to the

5    parties before it.  And when the case is over and their use is

6    no longer needed in this litigation for purposes of the

7    parties' proof, they are to be returned so that there is no

8    damage to their trade secret status simply by defending one's

9    self in Federal Court in this case.

10       We respectfully request that the Court enter the

11   protective order that we have proposed.

12       THE COURT:  What's the matter with the Court's

13   generic protective order?

14       MR. WARBURTON:  I would say the biggest issue with

15   the form protective order is that it would require us to --

16   Mr. Crosby is right, we don't want to bother the Court with

17   little ticky tack discovery things.  And if that standard

18   protective order were entered in this case, it could

19   potentially lead to just that on this point.  Laffitte and

20   other applicable law shields formulas and the like from any

21   discovery whatsoever in civil litigation such as this.  And

22   the parties, over the years, have had no issues with Cooper

23   Tire's extremely limited redaction of those core trade secrets

24   out of the documents as they're produced.

25       And my reading, and you can tell me if I'm wrong, Your

1    Honor, but my reading is for every redaction, a necessitated

2    motion to seal or motion to redact would need to be filed.

3        The protective order proposed by Cooper Tire, for certain,

4    allows for redactions.  And if there is an issue in redaction

5    occurring, the plaintiffs' counsel would follow the ordinary

6    course of contesting designation or redaction.  And so --

7            THE COURT:  Sound to me like I'm going to have to

8    decide it either way.

9            MR. WARBURTON:  Well, I'll say for myself, I don't

10   necessarily think so, because I've never had that issue with

11   Mr. Crosby.  Mr. Crosby has never, in my cases, taken issue

12   with a single redaction.  And so -- and I hazard a guess that

13   the Laffitte decision is on point, it is the law of this

14   state, and it provides complete immunity from discovery for

15   rubber formula.  It is a products liability tire case just as

16   this one where the plaintiffs pled design manufacturing

17   defect, and the Court has said that that is immune from

18   discovery.  And it is out of that vein of the law that

19   Hartsock grew.  I'll take Mr. Crosby's description of that

20   case for fact, that there was a dispute on behalf of Goodyear

21   relative to a formula production, and they likely contested

22   that and said Laffitte says no.  And the District of South

23   Carolina said, well, I'm not so sure.  And that ultimately

24   yielded the certified question over to the South Carolina

25   Supreme Court, answered in the affirmative, and now applied by

1    the Fourth Circuit to the case that's been remanded to the

2    District Court.

3        Thank you, sir.

4            THE COURT:  Thank you.  Anything else, Mr. Crosby?

5            MR. CROSBY:  Your Honor, only to point out that

6    there's a huge difference between trade secrets -- and I think

7    Mr. Warburton just -- he called core trade secrets, and then

8    he's trying to call everything else.  I can tell you, they

9    have never claimed trade secret status over the documents that

10   they will produce here, other than some redactions where they

11   may have taken out some things.

12       It's a bit of a conflated argument here to be pointing to

13   this trade secret.  There's a strict burden that has to be --

14   that a company has to go through to prove a trade secret.

15   They filed this affidavit.  We don't have those precise

16   documents here.  But there's just two different things going

17   on.  One is ordinary confidential business records like you

18   see in every products liability case that are produced.  They

19   produced in every, you know, case eventually, in trade

20   secrets.  So I just -- I didn't anticipate that we'd be down

21   here calling every document as produced a trade secret,

22   because that's just simply not the case.  We're talking about

23   manufacturing tolerances, you know, specifications, you know,

24   stuff that could actually be reverse engineered, you can go

25   out and pretty much measure what's there.

1          So that's the only point I'd make, that there are two

2     separate things here.  And if there was indeed a trade secret

3     that I was pushing to be produced, which I don't believe,

4     given the status of the tire in this case, that we intend to

5     produce -- pursue any compound formula, although there's not a

6     complete immunity, as was argued, under the Laffitte case.

7     The Court spelled out a higher standard under Laffitte case

8     for obtaining company trade secrets.  It wasn't that it's

9     immune.  But I don't believe we're going to be even seeking

10    any compound formula in this particular case.  At this

11    juncture.  Of course, I haven't seen all the documents and

12    stuff yet.

13         But I don't have anything else to add, Your Honor.

14              THE COURT:  Okay.  Your motion is the next motion.

15              MR. CROSBY:  Your Honor, I don't -- there's not

16    really a whole lot to say.  It's not in our briefing because I

17    tend to, you know, take responsibility no matter what.  You

18    may remember I tried a case before you a couple years ago

19    called Wickersham.  My paralegal that was here with me, Miss

20    Gent, who has been my paralegal for a long time, right after

21    that case, went out with a serious heart condition.  And

22    needless to say --

23              THE COURT:  That's because of the size of the verdict

24    you got.

25              MR. CROSBY:  Unfortunately, she has seen some bigger

1    than that.  Fortunately, she's seen some better than that.

2    But -- and, you know, I think what it did is -- and I didn't

3    put it in the briefing because I wouldn't want her to have any

4    stress from that, because she just came back to work,

5    fortunately.  But it makes you appreciate --

6            THE COURT:  How much you miss them?

7            MR. CROSBY:  Yeah, your staff.  And I had not only,

8    in 25 years I've only missed two deadlines, this being one,

9    and one right after she went out as well, with Judge Harwell

10    in another products liability case.

11        I don't have anything much to say about it.  It is my --

12    it's my mistake, it's nothing on my client.  I don't think

13    there's any prejudice to anyone by amending that.  I produced

14    our accident reconstruction report yesterday, as well as our

15    vehicle dynamics expert report.  We still need to get

16    documents from Cooper Tire so that we can complete our tire

17    forensics report.  And, you know, somewhere along the way,

18    when we first talked about this protective order issue back

19    in -- last fall, when we amended it, the scheduling order.

20    And it's typically that the person seeking a protective order

21    will file a motion, and somehow that did not get done, and I

22    don't know, it didn't trigger me and it didn't -- it didn't

23    get in our system correctly with that amended scheduling

24    order.  And obviously I was operating under the impression

25    that our deadlines had not gotten there.  And I don't know,

1    nothing I can say, but we made a mistake, and I would just ask

2    the Court in its discretion to amend the scheduling order and

3    allow us to get the case back on track.  I don't believe

4    there's any prejudice to anyone here.

5         MR. WARBURTON:  Your Honor, I have no interest in

6    belaboring this motion either.  And so we would simply direct

7    the Court to the papers before it.

8         I will say that there has been a sustained and multiple,

9    from our perspective, attempt, using different components, to

10   resolve not only the schedule issue before this Court, but the

11   protective order issue before this Court.  And we have been

12   unsuccessful.  We believe that we've made some very realistic,

13   very actually heavily compromised proposals to plaintiffs'

14   counsel, but those are not accepted.

15        And we have also gone to the length of proposing a

16   potential route of resolution in our papers in response to

17   plaintiffs' motion.  So would respectfully direct the Court

18   there in its discretion in resolving this other matter.

19        THE COURT:  Okay.  I mean, certainly you would agree

20   that Mr. Crosby probably could not have named an expert

21   witness to testify in this case until he received Cooper

22   Tire's documents.

23        MR. WARBURTON:  Well, it is done all kinds of

24   different ways, and it has been done all kinds of different

25   ways by Mr. Crosby, both in Federal and State Court.  He has

1    produced full reports from the gentleman he has identified,

2    Mr. Troy Cottles, before document productions by Cooper Tire

3    and after.  And so I don't think you find the full concession

4    there, Your Honor.  But don't read that argument to mean that

5    I reject out of hand the issue.  I think we've been, speaking

6    for myself and co-counsel, we've been very giving on this

7    question, but have found no forthcoming compromise from

8    plaintiffs' counsel.

9            THE COURT:  All right.  Assuming that I extended the

10   scheduling order, when will y'all be ready to try this case?

11   I'm not pushing.  Next year?

12           MR. WARBURTON:  I'll say this, and I would expect

13   Ronnie would probably agree with me.  I think that if and when

14   the Court resolves the two motions before it and indicates

15   which way it's going, first the protective order, that's that.

16   But then if the Court indicates an inclination one way or the

17   other on the schedule, we can then be counted on to work

18   together and put together some proposed deadlines for you.

19           THE COURT:  Okay.  I think --

20           MR. CROSBY:  Your Honor, just for the Court to

21   understand, it's not that I've been difficult to deal with on

22   this issue, but we tie a lot of stuff together, and I've just

23   always been a believer that I can't correct my mistake, you

24   know, negotiating over using that, and I'm not saying that

25   they were trying to put me in that position, but when it's all

1  tied together, I just don't think that's appropriate for me to

2  do, and that's why I have not been able to agree.

3          THE COURT:  And it's all tied together, and like

4  Alexander the Great, you just slash the Gordian knot, right?

5  That's what my job is.

6          MR. CROSBY:  Yes, sir.  Obviously, barring attorney

7  schedules, the case could be ready late this year.

8          THE COURT:  I was thinking next year.

9          MR. CROSBY:  Knowing how things are.  I think you've

10  got me in your next term with a case to try, and --

11          THE COURT:  I was thinking the first part of next

12  year.

13          MR. CROSBY:  Probably would be more realistic.

14          MR. WARBURTON:  We've had a lot of success over the

15  years, while we disagree on substance here and there and get

16  into hot depositions and all that, we take care of each

17  other's schedules.

18          THE COURT:  As a matter of history, do not try a

19  products case with Mr. Crosby in August.

20          MR. WARBURTON:  I'd rather not try a case in this

21  town in August with anyone.

22          THE COURT:  I've had -- last two summers I've had

23  have been August, and it's been very bad for the defendants.

24  So just a word to the wise.  So I'll exempt you from any

25  August trials no matter when.

1       MR. CROSBY:  Looks like we'll be back in this August

2  in one.

3       THE COURT:  All right.  I think right now, since law

4  is changing, and I'll have to look at the Hartsock case, I

5  read it last week when it came out.  I'm going to impose the

6  Court's standard confidentiality order in the discovery of

7  this case.  At the end of the case, when -- just to get it

8  moving.  I'm not deciding whether they're going to have any

9  sharing, either in house or out of the house right now.  I can

10  do that at the end of the case or when the case is over with.

11  I mean, the issues are what the issues are, once you've gotten

12  the documents and you can talk about confidentiality and trade

13  secrets and all that.  So I'll take that part of it under

14  advisement.  But right now, to get the case going, we'll just

15  do the Court's standard confidentiality case, and if we need

16  to tweak it, y'all just give me a call and let me know.

17     I also grant the motion to extend the scheduling order,

18  set the case for the first part of first quarter of 2019, and

19  back your deadlines up from there; how's that sound?  Give you

20  enough guidance?

21       MR. WARBURTON:  Understood.

22       THE COURT:  So I'm not deciding, you know, in the

23  classic I'm avoiding the issue, which is -- that's Rule 1.

24  But I think it's an important issue.  And my own philosophy, I

25  agree with Joe Anderson, you know, in that article that he

1    wrote in 2004.  I mean, Joe and I were classmates, he was

2    number one in my class, I was way behind him, he's always been

3    smarter than I am.  But I think it's a serious public policy

4    consideration too, when there's things out there, and I'm not

5    saying there is in this case, that can harm the public from a

6    repetitious -- and like, for example, maybe the Ford exploding

7    gas cases, they covered that up for a long time and a lot of

8    people died and got injured for that.  So there's a public

9    policy something at play.  Also understand that cases are

10   between plaintiffs and defendants, and they ought to stay in

11   the same thing.  So it goes both ways.

12       But I think I'm going to take a look at the Hartsock case

13   and the other cases, and if I change my mind, then I'll let

14   y'all know and I'll let y'all argue it again; how's that

15   sound?

16           MR. WARBURTON:  Yes, sir.  And we'll reserve on that

17   redaction question until you give us --

18           THE COURT:  Yeah, the redaction question, if it

19   becomes a problem, then give me a call, we'll talk about the

20   problem.  Right now it's theoretical.  So when it gets real,

21   let me know.

22           MR. WARBURTON:  Yes, sir.

23           THE COURT:  Okay.  Thank you very much.

24

25       (Court adjourned at 10:55 a.m.)

1                          REPORTER'S CERTIFICATION

2

3              I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4     Reporter for the United States District Court for the District

5     of South Carolina, hereby certify that the foregoing is a true

6     and correct transcript of the stenographically recorded above

7     proceedings.

8

9

10

      S/Debra L. Potocki

11    _____

12    Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25